UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RONALD REYNOLDS,** | ) | CASE NO.1:07CV1962 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| **CARLOS GUERRA, et al.,** | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| Defendants. | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter comes before the Court upon the Motion of Defendants Carlos Guerra and Brian Taylor for Summary Judgment. (ECF No. 30.) For the following reasons, Defendants' Motion is DENIED IN PART and GRANTED IN PART.

### I. BACKGROUND

On January 23, 2006, Cleveland police officers arrested Plaintiff Ronald Reynolds for disorderly conduct. (ECF No. 34, Ex. 1 at 2.) The arresting officers booked Plaintiff at the Second District police station. (Am. Compl. ¶ 7.) Defendants Carlos Guerra and Brian Taylor were the only Institutional Guards (IGs) on duty that evening. (Taylor Dep. 38:10-11.)

Plaintiff contends that the first physical altercation occurred after Defendants discovered

1

Plaintiff smoking a cigarette in the holding cell.  According to Plaintiff, Defendants entered the holding cell and told Plaintiff to put his hands against the wall.  (Reynolds Dep. 39:13.)  Plaintiff alleges that he was struck in the back as he faced the wall by one of the Defendants.  (Reynolds Dep. 40:4-41:1.)

Defendants then placed Plaintiff in an observation cell.  Plaintiff became agitated because he could not make a telephone call and began pounding on the plexiglass window.  (Reynolds Dep. 44:20-45:4.)  According to Plaintiff, the parties exchanged profane remarks through the window.  (Reynolds Dep. 47:11-20.)  Defendants maintain that Plaintiff was disrupting the entire jail.  (Taylor Dep. 26:7.)  Defendants allegedly entered the observation cell to tell Plaintiff that he would receive a telephone call if he "calm[ed] down."  (Taylor Dep. 27:6-9.)

The parties agree that a physical altercation occurred in the observation cell.  Plaintiff claims he did nothing to provoke the physical altercation.  (Reynolds Dep. 48:2-8.)  Defendants claim Plaintiff kicked Guerra in the leg and lunged at Taylor.   (Taylor Dep. 28:5-19.)  The Jail Incident Report created by Taylor and Guerra states: "[Plaintiff] then lunged at I.G. Taylor's legs and both [Taylor and Reynolds] landed on the floor."  (ECF No. 34, Ex. 1 at 15-16.)  In the Jail Incident Report, Taylor reported punching Plaintiff twice in the facial region.  (ECF No. 34, Ex. 1 at 16.)  Taylor later acknowledged punching Plaintiff four or five times near his forehead, but claims the force was necessary to free himself from Plaintiff's grip.  (Taylor Dep. 33:1-34:9.) Defendant Taylor asserts that Plaintiff maintained his grip around Taylor's waist for "a long time . . . maybe three, four, five minutes."  (Taylor Dep. 30:15-18.)  According to Taylor, Guerra was present in the cell during the altercation, but did not provide assistance.  (Taylor Dep. 30:19-32:10.)  Plaintiff acknowledges that only one IG hit him, but states that Guerra, not Taylor,

repeatedly punched him.  (Reynolds Dep. 50:22-51:2; 52:17-19.)

According to Plaintiff, "there was blood everywhere."  (Reynolds Dep. 83:2.)  Taylor stated that blood was coming from Plaintiff's eyebrow.  (Taylor Dep. 36:18-22.)  Taylor stated: "I just remember him bleeding."  (Taylor Dep. 41:13.)  The parties dispute whether Plaintiff lost consciousness.  Defendants sustained no visible injuries.  (ECF No. 34, Ex. 1 at 18.)

According to Defendant Taylor, Defendant Guerra called Emergency Medical Services (EMS) immediately after the altercation.  (Taylor Dep. 35:12-19.)  EMS technicians were already on the scene treating another detainee.  (Taylor Dep. 56:15-20.)  According to Defendant Taylor, the same EMS technicians already at the jail that evening responded to Reynolds' cell, but refused to treat Plaintiff because he threatened to fight the EMS technicians.  (Taylor Dep. 56:15-57:7; 35:13-19.)  Plaintiff disputes whether EMS were ever called because the jail log does not reflect such a call.  (ECF No. 34 at 21.)  Furthermore, the EMS technician on the scene that evening does not remember encountering Plaintiff.  (Coyle Dep. 41:2-7.)

The police sergeant on duty that evening "concluded that two officers should take [Plaintiff] to the hospital."  (Taylor Dep. 38:17-39:25.)  According to the Cleveland Police Field Report, the physical altercation occurred between 9:20 p.m. and 9:30 p.m.  (ECF No. 34, Ex. 1 at 6.)  Plaintiff was not taken to the emergency room (ER) at MetroHealth until 11:20 p.m.  (ECF No. 34, Ex. 1 at 14.)  The ER doctor concluded that Plaintiff suffered a "right orbital floor fracture" and a "laceration to [the] right eyebrow."  (ECF No. 34, Ex. 6c at 10.)  On January 27, 2006, Plaintiff returned to the ER, complaining of "stabbing pains in the right eye, pain on the bridge of his nose, and pain in the left rear ribs and left lumbar area."  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 6.)

Defendants created Incident Reports describing Plaintiff's alleged assault.  (ECF No. 34, Ex. 1 at 14-15.)  On February 16, 2006, a Cuyahoga County grand jury indicted Plaintiff for assault on a corrections officer.  Defendants Guerra and Taylor twice failed to appear for trial.  (ECF No. 34, Ex. 9 at 1-2.)  On May 15, 2007, the case was dismissed without prejudice for want of prosecution.  (ECF No. 34, Ex. 9 at 1.)

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).

The burden of showing the absence of any genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the

4

>   opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Summary judgment should only be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp.*, 477 U.S. at 322).

### III.  ANALYSIS

Plaintiff raises two 42 U.S.C. § 1983 claims, alleging excessive force in violation of the Fourth and Fourteenth Amendments and denial of medical care in violation of the Fourteenth Amendment.  Plaintiff also brings three claims under Ohio law, including assault and battery, negligence, and malicious prosecution.

### FEDERAL CLAIMS

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish the deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under the color of state law.  *Dominguez v. Corr. Med. Services*, 555 F.3d 543, 549 (6th Cir. 2009).  In this case, it is undisputed that the Institutional Guards were acting under the color of state law.

**A.  Plaintiff's § 1983 Claim for Excessive Force**

Plaintiff offers two sources for a constitutional deprivation: "Defendants' physical contacts with Mr. Reynolds . . . were unnecessary, unreasonable and excessive uses of force during a seizure of him, in violation of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment."  (Am. Compl. ¶ 29.)  The standard of liability varies significantly depending on whether the Fourth or Fourteenth Amendment applies. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (differentiating the "objective reasonableness" test of

the Fourth Amendment from the heightened "shocks the conscience" test of the Fourteenth Amendment). The applicable constitutional amendment "depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008) (citing *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002)).

At the time of the physical altercation, Plaintiff was detained at Cleveland's Second District police station, following his arrest for disorderly conduct. According to the Booking Information Form, Plaintiff was booked at 6:50 p.m. (ECF No. 34, Ex. 1 at 1.) The arresting officers left the station and Plaintiff was detained for two and a half hours before the altercation occurred. (ECF No. 34, Ex. 1 at 6.) The Sixth Circuit has never extended Fourth Amendment protections beyond the police station booking process. *Harris v. City of Circleville*, No. 08-3252, 2009 U.S. App. LEXIS 21641, at *17-19 (6th Cir. Oct. 2, 2009) (affirming the application of the Fourth Amendment during the booking process because the arresting officers were present).[1] The parties do not dispute Plaintiff's designation as a pretrial detainee for the purposes of constitutional analysis.

Pretrial detainees are afforded certain protections under the Fourteenth Amendment's Due Process Clause. "The substantive component of the Fourteenth Amendment protects citizens against conduct by law enforcement officers that 'shocks the conscience.'" *United States v. Budd*, 496 F.3d 517, 529 (6th Cir. 2007). At a minimum, the Fourteenth Amendment

---

[1] It remains unsettled whether the Fourth Amendment provides any further protection for pretrial detainees. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today.").

"protects a pretrial detainee from the use of excessive force that amounts to punishment." *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). All excessive force claimants "must show something more than *de minimis* force." *Id.*

In addition, pretrial detainees are entitled to the same constitutional rights as those enjoyed by convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Although the Eighth Amendment does not protect pretrial detainees, "the Eighth Amendment rights of prisoners are analogized to those of detainees under the Fourteenth Amendment to avoid the anomaly of extending greater constitutional protection to a [convicted prisoner] than to one awaiting trial." *Webb v. Bunch*, No. 93-5258, 1994 U.S. App. LEXIS 2331, at *11 (6th Cir. Feb. 8, 1994) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). Drawing upon the Eighth Amendment, a relevant consideration for excessive force claims under the Fourteenth Amendment becomes whether the force "was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Webb*, 1994 U.S. App. LEXIS 2331, at *11; *Batey v. County of Allegan*, No. 00-450, 2002 U.S. Dist. LEXIS 4918, at *16 (W.D. Mich. Mar. 14, 2002).

Having found that Plaintiff was protected by the Due Process Clause of the Fourteenth Amendment, the Court must now determine whether Plaintiff has established a constitutional violation under § 1983. Because the Court must conduct the same inquiry for the purposes of qualified immunity, the Court will continue the § 1983 analysis within the qualified immunity framework.

**1. Qualified Immunity**

Defendants argue that they are entitled to summary judgment on the excessive force claim under the doctrine of qualified immunity.  Generally, government officials performing discretionary functions are shielded from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008).  "Determining whether the government officials are entitled to qualified immunity generally requires two inquiries:  First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?"[2]  *Dominguez*, 555 F.3d at 549.

### a. Constitutional Violation

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from conduct that shocks the conscience and excessive force that amounts to punishment.  Here, there is a genuine dispute whether Plaintiff provoked the use of force.  According to Defendants, Plaintiff lunged at Defendant Taylor, grabbed his waist, pushed him against the wall, and wrestled him to his knees.  (Taylor Dep. 28:16-30:10.)  Defendant Taylor maintains that the punches to Plaintiff's face were necessary to free himself from Plaintiff's grip.  (Taylor Dep. 32:15-18.)  According to Plaintiff, he was shouting profanities at the Institutional Guards, but otherwise did not provoke the altercation.  (Reynolds Dep. 47:8-10.)

---

[2] Occasionally, the Sixth Circuit will consider a third element: "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005).  However, "[w]here the right involved is clearly established, . . . it can often be inferred that the conduct involved is objectively unreasonable."  *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 894 (6th Cir. 2006).

It is undisputed that Defendant Taylor struck Plaintiff's forehead at least four times with his fist. (Taylor Dep. 33:1-34:11.) Defendant Taylor does not remember exactly how many times he struck Plaintiff. (Taylor Dep. 33:24-34:3.) According to Plaintiff's version of the facts, he was struck more than ten times in the face and head with a closed fist. (Reynolds Dep. 50:17-24.) The blunt trauma from Defendant Taylor's fist fractured the "right orbital floor" of Plaintiff's eye socket. (ECF No. 34, Ex. 6c at 10.) According to Plaintiff, there was blood "everywhere," including "all over the glass [window]" of the observation cell. (Reynolds Dep. 82:18-83:2.) Defendant Taylor stated that Plaintiff began bleeding after the altercation, but did not remember the extent of the bleeding. (Taylor Dep. 36:18-37:5.) Viewing these facts in a light most favorable to Plaintiff, Plaintiff has sufficiently shown that a constitutional violation has occurred.

### b. Clearly Established Constitutional Right

A right is clearly established if "a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Clearly established means "the contours of the right [are] sufficiently clear [to] a reasonable official." *Lanman v. Hinson*, 529 F.3d 673, 691 (6th Cir. 2008) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). "An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*, 319 F.3d at 848. Given the abundance of Sixth Circuit case law, a pretrial detainee's right to be free from excessive force amounting to punishment is clearly established law. *Leary*, 528 F.3d at 443 (quoting *Graham*, 490 U.S. at 395 n.10); *Budd*, 496 F.3d at 530; *Phelps*, 286 F.3d 300.

The Court finds that Defendants are not entitled to qualified immunity on Plaintiff's

9

excessive force claim.  Plaintiff has sufficiently alleged a clearly established constitutional violation.

### 2.  Plaintiff Acknowledges Only One Defendant Used Force

Defendants argue that Defendant Taylor is entitled to summary judgment on the excessive force claim because "[a]ccording to Reynolds, it was IG Guerra who struck him." (Defs.' Mem. Supp. Summ. J. 8.)  Plaintiff does, in fact, acknowledge that only one of the Defendants used force.  (Reynolds Dep. 52:17-19.)  Plaintiff maintains that Guerra struck him, while Taylor stood off to the side.  (Reynolds Dep. 50:22-51:2.)  However, Taylor admits punching Plaintiff without Guerra's involvement.  (Taylor Dep. 34:4-6.)  During his deposition, Plaintiff stated that he could, in fact, tell Guerra and Taylor apart.  (Reynolds Dep. 52:14-16.)

Ordinarily, the Court would grant summary judgment to Defendant who did not apply force.  However, the Court cannot grant summary judgment for Defendant Taylor because Taylor admitted that he punched Plaintiff multiple times.  The Court is also not in a position to grant summary judgment for Defendant Guerra because Defendants sought such relief for the first time in their Reply Brief.  It is well-settled in the Sixth Circuit that issues raised for the first time in reply papers are not a proper basis for granting relief.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005); *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001); *Inland Waters Pollution Controls, Inc. v. Marra/Majestic Joint Venture*, No. 06-2697, 2009 U.S. Dist. LEXIS 20228, at *13-14 (N.D. Ohio Mar. 13, 2009); *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004).

Given the genuine disputes of material fact, Defendants are denied summary judgment on

Plaintiff's excessive force claims. *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) ("Summary judgment is not appropriate if there is a genuine factual dispute relating to whether [a defendant] committed acts that allegedly violated clearly established rights.")

### B.  Plaintiff's § 1983 Claim for Failure to Seek Timely Medical Care

Plaintiff brings a § 1983 claim against the Defendant Institutional Guards for their alleged failure to seek or render timely medical assistance in violation of the Due Process Clause of the Fourteenth Amendment.  To maintain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must establish that the defendants were deliberately indifferent to basic medical needs.  *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002); *Watkins v. City of Battle Creek*, 272 F.3d 682, 686 (6th Cir. 2001).  "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [a plaintiff's] health and safety." *Id.*  Medical need is objectively serious if a lay person would recognize the seriousness of the need for medical care.  *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  In addition to the objective component, the subjective component of deliberate indifference "requires a plaintiff to allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  Prison officials are deliberately indifferent if they intentionally deny or delay access to medical care for a serious medical need.  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

#### 1.  Qualified Immunity

Defendants argue that they are entitled to summary judgment on the denial of medical

care claim under the doctrine of qualified immunity.  The Court must employ the same two-step inquiry used in the context of the excessive force claim.  "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?"  *Dominguez*, 555 F.3d at 549.

### a. Constitutional Violation

"For the failure to provide medical treatment to constitute a constitutional violation, [Plaintiff] must show that Defendants acted with 'deliberate indifference to serious medical needs.'"  *Harris v. City of Circleville*, No. 08-3252, 2009 U.S. App. LEXIS 21641, at *17-19 (6th Cir. Oct. 2, 2009) (quoting *Dominguez*, 555 F.3d at 550)).  Deliberate indifference contains an objective and subjective component.  *Dominguez*, 555 F.3d at 550.

The physical altercation occurred between 9:20 p.m. and 9:30 p.m.  (ECF No. 34, Ex. 1 at 6.)  Plaintiff had suffered a fracture of his right orbital floor as a result of repeated punches to his head.  Defendant Taylor acknowledged that there was blood coming from Plaintiff's eyebrow.  According to Plaintiff, there was blood everywhere and he lost consciousness.  Defendants maintain Plaintiff never lost consciousness.  (Taylor Dep. 34:24-25.)  There is also a genuine dispute whether the Institutional Guards called EMS immediately.  The Jail Incident Report does not reflect such a call and the EMS technician who responded to the other detainee that night does not remember encountering Plaintiff.  (Coyle Dep. 41:2-7.)  Furthermore, Plaintiff was not taken to the ER until 11:20 p.m., almost two hours after the incident, upon the request of the police sergeant on duty that evening.

### b. Clearly Established Constitutional Right

"The Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established." *Phillips*, 534 F.3d at 545 (citing *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005)). "To make this right absolutely apparent, 'in 1992, [the Sixth Circuit] explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been clearly established since at least 1987.'" *Id.* (citing *Estate of Carter v. City of Detroit*, 408 F.3d 303, 313 (6th Cir. 2005)).

The Court denies Defendants qualified immunity on Plaintiff's denial of medical care claim. Plaintiff has sufficiently established a constitutional violation, by satisfying both the objective and subjective components of deliberate indifference. The right to adequate medical care is clearly established. Defendants are not entitled to summary judgment on the denial of medical care claim in light of the genuine disputes of material fact.

## STATE LAW CLAIMS

### A. Assault and Battery Under Ohio Law

Plaintiff argues that Defendants violated Ohio's assault and battery laws. Defendants contend that they are entitled to immunity under Ohio Rev. Code § 2744.03(A)(6). Defendants are not entitled to immunity if their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6)(b). The Ohio Supreme Court has emphasized that "the issue of wanton misconduct is normally a jury question." *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St. 3d 351, 356 (1994). Viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could conclude that Defendants acted with a malicious purpose or in a wanton or reckless manner. Therefore, Defendants are not entitled to immunity under O.R.C. § 2744.03(A)(6). Given the genuine disputes of material fact, the state

13

assault and battery claim will proceed to trial.

**B. Denial of Medical Care Claim Under Ohio Negligence Law and O.R.C. § 2921.44(C)(2)**

Aside from the intentional acts that caused his injuries, Plaintiff further alleges that Defendants negligently denied him medical care in violation of O.R.C. § 2921.44(C)(2) and Ohio common law.  Plaintiff's Complaint states: "Defendants' failures to obtain medical attention for Mr. Reynolds complained of hereunder were in violation of the Ohio law of negligence and Ohio Revised Code § 2921.44(C)(2), which prohibits dereliction of duty." (Am. Compl. ¶ 32.)  O.R.C. § 2921.44(C)(2) provides: "No officer, having charge of a detention facility, shall negligently . . . [f]ail to provide persons confined in the detention facility with adequate . . . medical attention."

Defendants argue that they are immune from liability under O.R.C. § 2744.03(A)(6). Generally, Ohio immunizes its employees from actions seeking "to recover damages for injury, death or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function."  O.R.C. § 2744.03(A).  According to O.R.C. § 2744.03(A)(6), "an employee is immune from liability unless" his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."  Therefore, even if Plaintiff establishes that Defendants were negligent, mere negligence is insufficient to remove the cloak of immunity.  O.R.C. § 2744.03(A)(6); *Fettes v. Hendershot*, No. 06-429, 2008 U.S. Dist. LEXIS 86378, at *38 (S.D. Ohio Sept. 8, 2008) (citing *Boyd v. Vill. of Lexington*, No. 01-64, 2002 Ohio App. LEXIS 1357, at *27 (Ohio Ct. App. Mar. 14, 2002)).  Defendants are entitled to summary judgment on Plaintiff's state dereliction of duty and negligence claims.

**C. Malicious Criminal Prosecution Under Ohio Law**

14

Plaintiff contends that his prosecution for assault on a correctional officer constituted malicious prosecution. To prevail on a claim of malicious prosecution under Ohio law, a plaintiff must show: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Tressel v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 146 (1990).[3]

Defendants argue that there was probable cause to prosecute Plaintiff for assault. "The return of an indictment by a grand jury is prima facie evidence of probable cause." *Anderson v. Eyman*, 180 Ohio App. 3d 794, 804 (Ohio Ct. App. 2009) (citing *Deoma v. Shaker Heights*, 68 Ohio App. 3d 72, 77 (Ohio Ct. App. 1990)). "Once an indictment has been returned by a grand jury, the plaintiff in a malicious prosecution action has the burden of producing substantial evidence to establish lack of probable cause. In other words, a plaintiff must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular." *Eyman*, 180 Ohio App. 3d at 804 (citing *Deoma*, 68 Ohio App. 3d at 77).

On February 16, 2006, a Cuyahoga County grand jury returned an indictment against Plaintiff for assault on corrections officers. (ECF No. 24, Ex. 1 at 23.) Plaintiff does not offer any evidence of perjury or irregularity during the grand jury proceedings. Rather, Plaintiff argues that Defendants concocted the assault in order to shield themselves from liability. Plaintiff points to the Defendants' lack of visible injuries to support this claim. Plaintiff has failed to provide the Court substantial evidence to counterbalance the presumption of probable

---

[3] A fourth element, "seizure of plaintiff's person or property," is only required in the context of malicious *civil* prosecution. *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St. 3d 264, 269-70 (1996).

15

cause resulting from the grand jury indictment. Therefore, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion for Summary Judgment on Plaintiff's federal excessive force and denial of medical care claims, as well as Plaintiff's state assault and battery claims. The Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's malicious prosecution and negligence claims. All parties shall proceed to trial on the remaining claims in this matter.

**IT IS SO ORDERED.**


**Date: November 4, 2009**

                                                                  **CHRISTOPHER A. BOYKO**
                                                                  **UNITED STATES DISTRICT JUDGE**